J. E. MURPHY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7137, 26472. Promulgated December 17, 1927.

*R. J. O'Connor, Esq.*, for the petitioner.
*Donald D. Shepard, Esq.*, for the respondent.

612

**OPINION.**

LITTLETON: Petitioner had been the owner of the land and the oil and gas rights for more than two years prior to the execution and delivery of the leases and deeds, and is, therefore, entitled to have his income taxed under section 206 of the Revenue Act of 1921 provided it was gain from the sale of "capital assets" as therein defined.

The oil and gas leases are similar to those involved in *Henry L. Berg et al.*, 6 B. T. A. 1287. Upon decision of the Board in that proceeding the action of respondent in refusing to tax income derived from the leases under section 206 is approved. To the same effect see *John T. Burkett*, 7 B. T. A. 560, and *D. R. McDonald*, 7 B. T. A. 1078; *Rosenberger* v. *McCaughn*, 20 Fed. (2d) 139.

In the *Berg* case, *supra*, the Board left open the question whether gain from an outright sale of oil and gas underlying land owned for more than two years is "capital gain" as that term is defined by section 206. By each warranty deed petitioner sold and conveyed

subject to a prior oil and gas lease, an undivided interest in the oil and gas underlying the tract described. Since each conveyance was subject to a prior oil and gas lease, the immediate effect of such conveyance was to assign an interest in the royalty, but it is clear that this right grew out of the absolute sale and conveyance of an undivided interest in the oil and gas. The question reserved in the *Berg* case, *supra*, is presented here.

Petitioner contends that since he had owned the land under which the oil and gas laid for more than two years prior to each conveyance, he was the owner of such minerals and, therefore, possessed at the date of sale a capital asset. On the other hand, respondent asserts that oil and gas, being of a fugitive nature, are, until reduced to possession at the surface, incapable of private ownership, and following this line of thought he argues that petitioner could not acquire and hold for two years that which no private individual could own.

It is obvious that respondent's contention if carried to its logical conclusion would result in the establishment of the rule that oil and gas in place are incapable of private ownership and therefore belong to the public at large. Before discussing this question the legal consequences resulting from the application of such a rule should be stated.

Suppose the petitioner had purchased a farm on which oil was subsequently discovered and after such discovery, sold his land and oil rights for a vastly larger amount than he had originally paid for the land. Could it be seriously contended that, since by far the larger portion of the purchase price was attributable to the oil, such price should be divided into two parts and the vendor deprived of the benefit of section 206 to the extent of that portion of the purchase price allocable to the oil? It is obvious that in such case the moving cause for the sale would be the oil and not the land. Assume that the owner should sell the surface to one person and the oil to another. Would there be any difference in the legal aspects of the two cases? What would result if such owner should sell the oil and reserve the land? The last mentioned question is the one involved in this proceeding and the solution thereof depends upon a determination as to the rights of an owner in fee to oil and gas beneath his land. These rights were discussed at length in *Ohio Oil Co.* v. *Indiana* (No. 1), 177 U. S. 190. The issue involved in this case is thus stated by the court:

The assignments of error all in substance are resolvable into one proposition; which is, that the enforcement of the provisions of the Indiana statute as against the plaintiff in error, constituted a taking of private property without adequate compensation, and therefore amounted to a denial of due process of law in violation of the Fourteenth Amendment. * * *

The statute involved in effect forbade the waste of gas and imposed penalties for its violation. The court, after pointing out that to a certain extent there was an analogy between oil and gas and animals *ferae naturae*, but that such analogy was subject to certain limitations, said:

* * * In things *ferae naturae* all are endowed with the power of seeking to reduce a portion of the public property to the domain of private ownership by reducing them to possession. In the case of natural gas and oil no such rights exists in the public. ·It is vested only in the owners in fee of the surface of the earth within the area of the gas field. This difference points at once to the distinction between the power which the lawmaker may exercise as to the two. In the one, as the public are the owners, every one may be absolutely prevented from seeking to reduce to possession. No divesting of private property, under such a condition, can be conceived because the public are the owners, and the enacting by the State of a law as to the public ownership is but the discharge of the governmental trust resting in the State as to property of that character. *Geer* v. *Connecticut*, 161 U. S. 519. On the other hand, as to gas and oil, the surface proprietors within the gas field all have the right to reduce to possession the gas and oil beneath. *They could not be absolutely deprived of this right which belongs to them without a taking of private property*. But there is a co-equal right in them all to take from a common source of supply, the two substances which in the nature of things are united, though separate. It follows from the essence of their right and from the situation of the things, as to which it can be exerted, that the use by one of his power to speak to convert a part of the common fund to actual possession may result in an undue proportion being attributed to one of the possessors of the right, to the detriment of the others, or by waste by one or more, to the annihilation of the rights of the remainder. Hence it is that the legislative power, from the peculiar nature of the right and the objects upon which it is to be exerted, can be manifested for the purpose of protecting all the collective owners, by securing a just distribution, to arise from the enjoyment by them, of their privilege to reduce to possession, and to reach the like end by preventing waste. This necessarily implied legislative authority is borne out by the analogy suggested by things *ferae naturae*, which it is unquestioned the legislature has the authority to forbid all from taking, in order to protect them from undue destruction, so that the right of the common owners, the public, to reduce to possession may be ultimately efficaciously enjoyed. *Viewed, then, as a statute to protect or to prevent the waste of the common property of the surface owners, the law of the State of Indiana which is here attacked because it is asserted that it divested private property without due compensation, in substance, is a statute protecting private property and preventing it from being taken by one of the common owners without regard to the enjoyment of the others.* Indeed, the entire argument, upon which the attack on the statute must depend, involves a dilemma, which is this: If the right of the collective owners of the surface to take from the common fund and thus reduce a portion of it to possession, does not create a property interest in the common fund, then the statute does not provide for the taking of private property without compensation. If, on the other hand, there be, as a consequence of the right of the surface owners to reduce to possession, a right of property in them, in and to the substances contained in the common reservoir of supply, then as a necessary result of the right of property, its indivisible quality and

the peculiar position of the things to which it relates, there must arise the legislative power to protect the right of property from destruction. To illustrate by another form of statement, the argument is this: There is property in the surface owners in the gas and oil held in the natural reservoir. Their right to take cannot be regulated without devesting them of their property without adequate compensation, in violation of the Fourteenth Amendment, and this, although it be that if regulation cannot be exerted one property owner may deprive all the others of their rights, since his act in so doing will be *damnum absque injuria*. This is but to say that one common owner may devest all others of their rights without wrongdoing, but the lawmaking power cannot protect all the owners in their enjoyment without violating the Constitution of the United States. * * * (Italics ours.)

This case was followed in *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, involving a New York statute; in *Oklahoma* v. *Kansas Natural Gas Co.*, 221 U. S. 229, involving an Oklahoma statute, and in *Walls* v. *Midland Carbon Co.*, 254 U. S. 300, involving a Wyoming statute. The court in the Lindsley case based its opinion on the rule laid down in the *Ohio Oil Co.* case, and added, "But were the question an open one we should still solve it in the same way." From these cases the following rules may be deduced: The right to reduce to possession gas and oil underneath one's land is a property right protected by the Fourteenth Amendment. Oil and gas do not belong to the state but constitute the common property of all owners of the soil that lies above the oil and gas deposit. This common ownership is subject to the right of individual ownership, when the oil or gas is reduced to possession by any one of the common owners. Such common ownership is the private property of the owners of the soil and as such may be protected by statute.

All the property rights above enumerated had been acquired and held by petitioner for more than two years prior to the date of each conveyance. Under the facts the Board is of the opinion that the oil and gas conveyed by petitioner to his grantee were "capital assets," as defined in section 206. To hold otherwise would be to give to a relief statute a narrow construction which would do violence to the intention of Congress as expressed both in the words of the section and the report of the Committee on Ways and Means of the House of Representatives. See *Henry L. Berg et al, supra.*

Petitioner is entitled to have so much of his income as resulted from a gain derived from sales of oil, gas and other minerals, taxed under the provisions of section 206.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*