## MICHIGAN CONSOL. GAS CO. v. PAN-HANDLE EASTERN PIPE LINE CO.

Civ. No. 7576.

United States District Court
E. D. Michigan, S. D.

Sept. 17, 1948.

Dyer, Angell, Meek & Batten, Clifton G. Dyer and Walter M. Meek, all of Detroit, Mich. (Henry A. Montgomery, of Detroit, Mich., of counsel), for plaintiff.

William E. Dowling, of Detroit, Mich. (Samuel Riggs, of Detroit, Mich., Robert P. Patterson and John S. L. Yost, both of New York City, and Scott & Littman, of Washington, D. C., of counsel), for defendant.

Raymond J. Kelly, Corp. Counsel for the City of Detroit, of Detroit, Mich., for City of Detroit, intervenor.

Archie C. Fraser, Asst. Atty. Gen., of Michigan, for Michigan Public Utilities Commission, intervenor.

Bradford Ross Gen. Counsel, Wm. S. Tarver, Asst. Gen. Counsel, and Kenneth W. Wagner, Senior Atty., all of Washington, D. C., for Federal Power Commission, intervenor.

Cleon H. Foust, Atty. Gen. for the State of Indiana and Frank E. Coughlin, First Asst. Atty. Gen., for the State of Indiana for Public Service Commission of Indiana, intervenor.

Glenn R. Slenker, Public Counselor for the State of Indiana and Robert E. Jones, Asst. Public Counselor, both of Indianapolis, Ind., for State of Indiana.

Van Atta, Batton & Harker and Robert R. Batton, all of Marion, Ind., for Central Indiana Gas Co., and Kokomo Gas & Fuel Co., intervenors.

Barnes, Hickam, Pantzer & Boyd and Alan W. Boyd, all of Indianapolis, Ind., for Anchor Hocking Glass Corporation, intervenor.

Edmond W. Hebel, of Indianapolis, Ind., for Indiana Gas & Water Co., Inc., intervenor.

LEVIN, District Judge.

The plaintiff, a Michigan corporation, is a distributor of gas in the metropolitan Detroit area, and the defendant, a Delaware corporation, is the operator of an interstate gas pipe line system. Jurisdiction of the court is based upon the statutory amount in controversy and the diversity of the citizenship of the parties.

The complaint sets out the grievances of the plaintiff which are based upon the defendant's breach of its contract with the plaintiff by the terms of which the defendant agreed to deliver to the plaintiff its natural gas requirements up to 125,000,000 cubic feet per day, and to maintain and operate its system in such a way as to insure the deliveries contracted for. The plaintiff prays for a temporary injunction during the pendency of the action, and a permanent injunction after hearing, restraining the defendant "from operating its pipe line system in such a way that the daily deliveries of natural gas into and through the Edgerton Station[1] to defendant's customers, including plaintiff, east thereof are less than the maximum delivery capacity of said station at any time when deliveries of natural gas to plaintiff are less than 125,000,000 cubic feet per day," and requiring defendant as soon as possible to install certain additional facilities authorized by the Federal Power Commission.

The defendant which is a "natural gas company" as defined by the Natural Gas Act, 15 U.S.C.A. § 717a, moves the court to dismiss the complaint upon the ground that the Congress has entrusted to the Federal Power Commission the exclusive jurisdiction to determine all matters with respect to interstate transportation and sale of natural gas for resale, including all asserted contractual rights with respect thereto, subject only to the right of review by the appropriate United States Court of Appeals in the manner provided for in Section 19(b) of the Act, 15 U.S.C.A. § 717r(b).

The City of Detroit and the Michigan Public Utilities Commission, which is the public authority having jurisdiction generally of public utilities operating within that state, have been permitted to intervene, Rule 24, Federal Rules of Civil Procedure, 28 U.S.C.A., and they support the plaintiff and join in its prayer for relief. The following, who have also intervened with the permission of the court, have filed motions to dismiss the complaint:

The Federal Power Commission; The Public Service Commission of Indiana, which is the administrative body charged with the regulation and control of corporations furnishing public utilities service in the State of Indiana; The Public Counselor of Indiana who is the statutory officer of that State charged with the duty of representing and protecting the interest of the public generally in all matters affecting the public utility business in the State of Indiana; Central Indiana Gas Company, which is a public utility engaged in the distribution of natural gas in certain areas in Indiana and whose sole source of supply of such gas is alleged to be from the de-

---

[1] The capacity of this station determines the defendant's ability to make deliveries to all its customers east of this point. It is a gateway.

fendant; Indiana Gas and Water Company, Inc.; Kokomo Gas. and Fuel Company, dependent to some extent upon the defendant for its supply of gas; and Anchor Hocking Glass Corporation which is a direct industrial customer of the defendant.

The contract which forms the subject matter of this litigation was entered into in 1935, and was subsequently supplemented by various agreements. After the enactment of the Natural Gas Act, 15 U.S.C.A. § 717 et seq., the contract and supplemental agreements were filed with the Federal Power Commission as rates schedules, as provided by the Act. This contract and the supplemental agreements required the plaintiff to stimulate and to make every reasonable effort to increase its sales of natural gas for domestic, industrial and commercial purposes. The plaintiff's sales efforts were highly successful, and many thousands of home owners installed gas equipment for heating their homes and for cooking, and many industries in the area have become dependent, some entirely and others to a lesser extent, upon the gas supply which the plaintiff undertook to furnish in reliance upon its contract with the defendant.

Under the terms of the contract and supplemental agreements, the defendant obligated itself to sell and deliver to the plaintiff, "all of the natural gas requirements of buyer for distribution and sale to any and all of its present and future customers, and for its own use" provided that subsequent to 1940 the defendant's maximum delivery obligation of gas should not exceed 125,000,000 cubic feet per day. The defendant also agreed "to own, or have available through subsidiaries or contract rights a system of pipe lines which shall be of adequate size for the transmission of gas from the various sources of supply to the place of delivery hereunder," and "to operate its pipe line, or cause the same to be operated in such manner as to insure as near as is reasonably possible a continuous supply of gas in the quantity and of the quality required by this agreement." The defendant promised further that in the event its deliveries to the plaintiff fell below the amounts fixed by the contract by reason of circumstances beyond the defendant's control, it would "use due diligence to remedy the situation and remove the cause in an adequate manner and with all reasonable dispatch."

The defendant is not delivering gas in the supply contracted for. It has filed no answer to the complaint, but on its motion to dismiss, states that all contracts which it made are subject to the approval of the Federal Power Commission, and that the proper forum for plaintiff's complaint is that body. The plaintiff's position is that it accepts all of the orders and regulations of the Commission, and that its complaint does not ask the court to require the defendant to do anything which is forbidden by any provision of the Natural Gas Act, or any order of the Federal Power Commission; but, that a natural pipe line company is under no statutory duty to render adequate service to its customers, nor does the Act empower the Federal Power Commission to either require such service or order the erection of the facilities needed for such service. The plaintiff alleges in its complaint that in order for the defendant to perform its contract to deliver to the plaintiff up to 125,000,000 cubic feet of gas per day, it is now necessary to install certain additional piping at its station at Edgerton, Indiana. Upon application by the defendant, these additional facilities, which plaintiff alleges will make it possible for the defendant to meet its gas supply contract obligation, were authorized by the Federal Power. Commission, and a certificate of public convenience and necessity was issued on November 30, 1946.

The transportation of natural gas by pipe line from one state to another for sale and consumption in the latter had been recognized as interstate commerce for many years (State of Oklahoma v. Kansas Natural Gas Company, 221 U.S. 229, 31 S.Ct. 564, 55 L.Ed. 716, 35 L.R.A., N.S., 1193; Pennsylvania Gas Company v. Public Service Comm., 252 U.S. 23, 40 S.Ct. 279, 64 L.Ed. 434; State of Missouri ex rel. Barrett v. Kansas Natural Gas Co., 265 U.S. 298, 44 S.Ct. 544, 68 L.Ed. 1027) but it was not until June 21, 1938, that the transportation and sale of natural gas for resale in interstate commerce, and natural

gas companies engaged in such business, were brought directly under federal regulation, Natural Gas Act, 15 U.S.C.A. § 717. The declaration of policy of this Act set out in Sec. 1(a) states: "As disclosed in reports of the Federal Trade Commission made pursuant to Senate Resolution 83 (Seventieth Congress, first session) and other reports made pursuant to the authority of Congress, it is hereby declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest."

The Federal Power Commission is the administrative agency charged with the administration of the Natural Gas Act[2] with broad regulatory powers, and contracts entered into by private parties lose their force to the extent that they conflict with orders or regulations of the Commission. Colorado Interstate Gas Co. v. Federal Power Commission, 10 Cir., 142 F.2d 943, 953.

Sec. 4(b) of the Act provides: "No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service."

Sec. 5(a) of the Act authorizes the Commission to issue orders requiring compliance with these provisions by providing that whenever the Commission "shall find that any rate, charge, or classfication" or "that any rules, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory, or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, prac-

tice, or contract to be thereafter observed and in force, and shall fix the same by order."

■ The Supreme Court has asserted in a rate case that "Section 5 of the Act (The Natural Gas Act) was modelled on the provisions of the Transportation Act, 49 U.S.C. §§ 13, 15 * * *" Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 584, 62 S.Ct. 736, 742, 86 L.Ed. 1037. It is settled that the equivalent sections of the Transportation Act give to the Interstate Commerce Commission authority to regulate distribution of coal cars at times of shortage in order to prevent discriminatory distribution. Interstate Commerce Commission v. Illinois Central R. Co., 215 U.S. 452, 30 S.Ct. 155, 54 L.Ed. 280. As stated in Panhandle Eastern Pipe Line Company v. Public Service Commission of Indiana, et al., 332 U.S. 507, 520, 68 S.Ct. 190, 197, the Act "does not contemplate ineffective regulation at either [the federal or state] level." While it seems clear enough that Congress expressly authorized the Commission to allocate the supply of natural gas to prevent discriminatory practices this court may well adopt the reasoning in Colorado Interstate Gas Co. v. Federal Power Commission, supra, 142 F.2d at page 952, that "the grant of powers expressly conferred upon the Commission carried with it by implication all authority reasonably necessary and fairly appropriate to make such powers fully efficacious, and to render effectual the discharge of the duties of the Commission."

■ Giving attention first to the request for injunctive relief which would order the defendant to operate its Edgerton Station at its maximum capacity at all times when deliveries of natural gas to the plaintiff are less than 125,000,000 cubic feet per day, it seems clear that, however phrased, the plaintiff is seeking to have this court review a previous determination by the Commission.

On July 17, 1948, the Commission issued an order directing the defendant to "make

[2] For a history of regulation beginning with the Rivers and Harbors Act, approved Sept. 19, 1890, 26 Stat. 453, see "Federal Power Commission" a monograph of the Attorney General's Committee on Administrative Procedure published in 1941 as Pt. 12, S. Doc. 10, 77th Congress, 1st Session.

deliveries to Michigan Consolidated Gas Company at Detroit * * * of such volumes of natural gas as may be available after making deliveries to all of its other customers east of its Edgerton Compressor station * * * pursuant to the provisions of the effective tariffs and contracts * * *"[3] The opinion which accompanied this order shows that the arguments here presented—that the facilities are not being used to their maximum capacity, and that deliveries to "interruptible" customers should be discontinued where they conflict with performance of "firm" contracts—were considered by the Commission. While the opinion expressed the belief "that Panhandle will exert every reasonable effort to deliver through that station the largest volumes of gas possible; and we shall expect that, if necessary to do so, and to the extent required, Panhandle will make appropriate curtailment of interruptible deliveries pursuant to the provisions of effective tariffs and contracts," the Commission expressly refused to order the defendant to act in accordance with the expectations it there expressed. The plaintiff may not substitute a new lawsuit in this court for the exclusive statutory method of review set out in Sec. 19(b).

The plaintiff also asks this court to order the defendant to install as soon as possible the additional facilities authorized by the Federal Power Commission on November 30, 1946. It is plaintiff's position that it is not seeking the aid of this court to enforce an order of the Commission. It bases its claim on the provisions of its contract with the defendant which require the latter to build facilities which are adequate to supply the plaintiff with 125,000,000 cubic feet of gas a day, and that defendant has failed to perform in accordance with these terms. The order of the Commission, plaintiff continues, does not supersede its contract since the order merely authorizes erection of the new facilities; and also because the Commission has no authority to order the erection of the facilities de-

scribed. The sole significance of the order is that it constitutes a compliance with the statutory requirement, Sec. 7(c), that the Commission must approve the new construction in the form of a certificate of public convenience and necessity. Since the certificate has issued, plaintiff argues that this court can enforce its contract to the extent of the facilities authorized by the certificate by ordering erection of these facilities. There is no invasion of the province of the Commission since, in plaintiff's view, the Act fails to empower the Commission to order the erection of these facilities should the defendant fail to build them.

Section 7(a) authorizes the Commission to order the extension or improvement of transportation facilities, the establishment of physical connections with the sale of natural gas to any person or municipality engaged or authorized to engage in the local distribution of gas to the public and to extend transportation facilities to adjacent communities if no undue burden will be placed upon the natural gas company thereby. The Commission is, however, denied authority to compel the enlargement of transportation facilities for such purposes, or to compel the establishment of physical connections or the sale of natural gas when impairment of the ability of the natural gas company to render adequate service to its customers would result. If the Commission has the power to order erection of the described facilities, then it is clear that there is no jurisdiction in this court to grant the relief prayed for; but, whether or not the facilities authorized are mere "extensions" or "improvements", or are "enlargements", are questions of fact and law which must first be presented to the Commission, in the form here presented for the first time, in order to exhaust the plaintiff's administrative remedies. The Commission's determination is reviewable, if review is sought, only by appeal to the appropriate Court of Appeals. Chief Justice Groner of the United States Court of

---

[3] On August 25, 1948, the day before the hearing in this case, the Commission issued a supplemental opinion which clarified its July 17th holding. It said: "Clearly, our order of July 17, 1948,

modifies the obligation of Panhandle to deliver 125,000,000 cubic feet per day to Michigan Consolidated of Detroit * * *"

Appeals District of Columbia, has said: "On no subject is the opinion of that Court [the Supreme Court] as I view it, more definitely fixed than it is on the lack of power of the courts to inject themselves or be injected into proceedings which Congress has committed to the primary jurisdiction of administrative agencies." Miles Laboratories v. Federal Trade Commission, 78 U.S.App.D.C. 326, 140 F.2d 683, 685. Compare: Macauley v. Waterman S.S. Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839.

The soundness of the rule which commits the plaintiff to the Commission and which prescribes a single procedure for review of its orders is illustrated by the fact that if plaintiff's view is adopted, this court would enter an order requiring the defendant to erect facilities for the purpose of increasing deliveries of gas to the plaintiff, even though this court could not prevent the Commission from ruling at a later date that it is in the public interest that the facilities finally erected should be used for a purpose other than to increase deliveries of natural gas to the plaintiff. No such situation was intended to result from Section 7(a) or any other provision of the Act.

The Detroit area suffered last winter through inadequate gas supply, and the court is not unmindful of the fact that the orders of the Federal Power Commission might result in further hardship to the customers of the plaintiff, but this is a matter with which this court is not permitted to concern itself. Congress has taken the position that uniformity of regulation of a gas pipe line traversing more than one state would be impossible if such pipe lines were subject to supervision and regulation by any authority other than that of the national agency designated by it. "Congress has entrusted the administration of the Act to the Commission not to the courts." Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 617, 64 S.Ct. 281, 295, 88 L.Ed. 333.

This court is without authority to determine the grievances set forth in the complaint. Accordingly, an order will be entered dismissing it.