## MICHIGAN CONSOL. GAS CO. v. PANHANDLE EASTERN PIPE LINE CO. et al.

No. 10834.

United States Court of Appeals Sixth Circuit.

April 7, 1949.

Walter Meek, and C. G. Dyer, both of Detroit, Mich. (Clifton G. Dyer, Walter M. Meek, Dyer, Angell, Meek & Batten, and Henry A. Montgonery, all of Detroit, Mich., on the brief), for appellant.

Robert P. Patterson, of New York City, William S. Dowling, of Detroit, Mich. and William S. Tarver, of Washington, D. C. (William E. Dowling, of Detroit, Mich., Robert P. Patterson and John S. L. Yost, both of New York City, and Harry S. Littman, of Washington, D. C., on the brief), for appellees.

Bradford Ross, William S. Tarver, Louis W. McKernan and Kenneth W. Wag-

ner, all of Washington, D. C., for Federal Power Commission.

Before SIMONS, ALLEN and McAL-LISTER, Circuit Judges.

SIMONS, Circuit Judge.

The controversy involves the jurisdiction of the district court to entertain a suit for the specific performance of a contract between a pipe-line company and a distributor in view of broad regulatory powers conferred upon the Federal Power Commission under the Natural Gas Act, 15 U.S.C.A. § 717 et seq. The Federal Power Commission, various gas companies, public service commissions and others, intervened as defendants and moved for a dismissal of the complaint. The court, in a well-considered opinion, 80 F.Supp. 27, concluding that Congress had committed the regulation of pipe-line companies to the supervision of the Commission and not to the courts, in respect to the specific grievances of the appellant, granted the motions.

No factual controversy is involved and the question is solely one of statutory construction. The appellant, a Michigan corporation, is a local utility furnishing gas to the metropolitan area of Detroit, and Panhandle is a Delaware Corporation engaged in interstate transportation and sale of natural gas. Under a series of contracts between the two, Panhandle obligated itself to deliver to Consolidated its requirements of natural gas up to 125,000,000 cubic feet daily, and to build and maintain such pipe-line system as would be adequate for such delivery. Over several periods during three years prior to the filing of the complaint, Panhandle's pipe-line system had not been equal to the demands of Consolidated's customers. This resulted in curtailment of delivery to Consolidated under orders of the Commission, from which appeals are now pending. Consolidated, however, asserts that it does not in this cause raise any question as to their validity. It seeks performance of the contractual obligation of Panhandle only insofar as such performance is possible within the provisions of present or future valid orders of the Commission. The curtailment orders were based upon findings of the Commission that a dominant, if not controlling factor with respect to the supply of gas available from Panhandle's system east of Edgerton Station, is the physical capacity of that station. All gas to Michigan and Ohio customers comes through a compressor station at Edgerton, Indiana, a few miles west of the Ohio state line. While the Commission could not definitely determine its delivery capacity, it did determine that it was not sufficient to supply all customers east thereof with full contract deliveries at all times. The Commission therefore ordered that on days of deficiencies in deliveries all Ohio and Michigan customers should receive full contract requirements except the two largest customers,—the appellant and the Michigan Gas Storage Company—and that these should share the balance of the gas available on a percentage basis specified in the order.

The inadequacy of the facilities at Edgerton had long been recognized, and in 1946 Panhandle secured from the Commission a certificate of convenience and necessity permitting improvement of its facilities there, along with other improvements to its system. The Panhandle pipe-line, as its name indicates, originates in Texas oil fields, and the construction authorized, designated as "Group B" facilities, includes additional compressor facilities in Texas, Oklahoma and Kansas and additional pipeline facilities at various points in the states of Kansas, Missouri, Illinois, Indiana, Ohio and Michigan. Only that portion of "Group B" facilities proposed to be installed immediately west and east of the Edgerton Compressor Station are the subject of Consolidated's prayer for performance. The Commission found that the estimated cost of the "Group B" facilities is approximately $23,751,550; that they are necessary to augment the present system capacity so that it may be able better to meet increased firm market demands; that they are required for the continuance of adequate service to customers and that their construction and operation will have no adverse effect on existing rates and services.

The appellant's argument is that its suit for specific performance states a case over which the court normally has jurisdiction

as one between citizens of different states. The Natural Gas Act, it says, does not supersede the court's jurisdiction unless the relief prayed for will conflict with the Commission's jurisdiction and authority under it. The Commission has no authority to grant the relief sought since it has only such powers as the Act gives to it, either expressly or by necessary implication. Section 717f(a) provides that the Commission may, if it finds such action necessary or desirable in the public interest, order a Natural Gas Company to extend or improve its transportation facilities if no undue burden will thereby be placed upon such natural-gas company, subject, however, to the proviso in that section, "that the Commission shall have no authority to compel the enlargement of transportation facilities for such purposes, or to compel such natural-gas company to establish physical connection or sell natural gas when to do so would impair its ability to render adequate service to its customers."

The Commission may, so the argument runs, require extensions and improvements in existing transportation facilities only so long as they do not involve enlargement. It is expressly denied authority for enlargement, and while there may be cases where there is doubt as to whether an extension or improvement involves enlargement, this is not such case, for prior to the filing of its petition for a certificate of public necessity and convenience, Panhandle's pipe-line up to a point 28.28 miles west of Edgerton Station was a double pipe-line. The installation of the authorized facilities at Edgerton would extend the double pipe-line portion of the Panhandle system to a point inside the State of Michigan, and therefore would constitute an enlargement of transportation facilities as that term is used in the § 717f(a) proviso, for the new facilities involve laying a second pipe-line along the present single pipe-line for a few miles west and east of Edgerton. None of the parties, it says, have disputed this fact. Further, it is said that while §§ 717f(c) and 717f(e) forbid any natural-gas company to increase its transportation facilities without permission of the Commission, the order of the Commission is purely permissive and not obligatory upon the gas company which is left free to install or not install the authorized facilities as it may see fit. While the Commission may attach conditions to its permission it did not do so in this case insofar as present subject matter is concerned, and it is now too late to add conditions. So the view is urged upon us that the delegation of such limited powers to the Commission indicates no purpose of the Congress to deprive the court of its normal jurisdiction to grant the relief asked.

The appellant also puts it in another way. Specific performance of a contractual obligation which is outside the regulatory powers of the Commission, is a proper function for the federal court when there is no primary jurisdiction in the Commission. The Commission has already investigated, declared the need for and authorized the facilities sought. Since it has no power to compel their construction and operation, no preliminary petition is required to exhaust administrative remedies. The Commission has already acted to the limit of statutory authority and no primary jurisdiction remains for it to exercise.

A collateral question is also involved. In addition to seeking construction of additional facilities at Edgerton, the appellant asks the court to compel Panhandle to operate present facilities in such manner as to insure, as near as is reasonably possible, a continuous supply of gas in the quantity required by its contract. With respect to this prayer it says that the Commission is likewise without power to order Panhandle to operate to maximum capacity, and so a preliminary application to the Commission would be both futile and unnecessary. In conclusion the appellant argues that it seeks but enforcement of contractual obligations. These are beyond the power of the Commission to enforce because outside the scope of regulatory powers entrusted to it. If the courts may not grant the remedy, no remedy exists; and Congress could have had no purpose to create such situation. The case should be reversed and remanded for trial, but if this court is of the view that jurisdiction exists to grant part, even though not all of the relief requested, the case should still be remanded with respect to such partial relief.

To the contentions of Consolidated thus briefly outlined, Panhandle and the Commission answer that the regulation and supervision of natural-gas companies have been entrusted by the Congress to the Commission and not to the courts; that the relief which the appellant seeks involves the consideration of questions of fact if not, indeed, of law, not determined by the Commission; that whether an increase in existing facilities constitutes enlargement or merely extention of such facilities depends upon facts not yet considered or determined; that the certificate of convenience and necessity granted to Panhandle authorizes many changes in an integrated facility all the way from Texas to Michigan, and no authority has been given Panhandle to make some of the improvements and not others, or to give priority to one change rather than to others. Piecemeal improvement is not within the terms of the Commission's certificate of convenience and necessity, at least until it has been determined by the Commission that such improvement standing alone will not result in preference to or discrimination against one customer over another, or of preference or discrimination between classes. The Commission contends it has primary jurisdiction over the subject matter of the complaint and Consolidated may not bypass it by this action. It points out that maintenance of this and similar actions would introduce disjointed and piecemeal regulation at the hands of courts, both federal and state, in place of the uniform and comprehensive regulation by the Commission sought by the Act. On behalf of Panhandle, it is urged that the complaint does not state a cause of action for breach of a contractual obligation because it is plain, upon the face of the complaint, that Panhandle was able and did deliver to Consolidated the amount of gas contracted for until its deliveries were curtailed by the paramount authority of the Commission.

 In the determination of the issues presented and so ably argued, we are compelled to give consideration to the underlying purpose of the Congress in enacting the Natural Gas Act. It was to provide "through the exercise of the national power over interstate commerce, an agency for regulating the wholesale distribution to public service companies of natural gas moving interstate * * *", Illinois Natural Gas Co. v. Central Illinois Public Service Co., 314 U.S. 498, 506, 62 S.Ct. 384, 387, 86 L.Ed. 371; "Congress has entrusted the administration of the Act to the Commission not to the courts", Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 617, 64 S.Ct. 281, 295, 88 L.Ed. 333, or as Mr. Justice Jackson observed in his separate opinion in that case, "To carry this into techniques of inquiry is the task of the Commissioner rather than of the judge, and it certainly is no task to be solved by mere bookkeeping but requires the best economic talent available." These observations are not mere rhetoric. While they are generalizations taken from their context they are the generalizations of controlling authority and must condition our determinations.

 The first question we have to deal with is whether what Consolidated wants done at the Edgerton Station under command of court decree, constitutes on the one hand a mere extension or improvement, concededly within the power of the Commission to direct, or an enlargement which the Commission may not order. The Act nowhere defines these terms and it is somewhat baffling to determine when and under what circumstances an extension or improvement of facilities ceases to be such and becomes enlargement. Be that as it may, it is nevertheless clear to us that in the contemplation of an integrated facility extending across eight states, whether a few miles of extra pipe constitutes an enlargement or mere improvement, requires consideration of data and of facts and circumstances within the competency of the administrative authority entrusted with regulation rather than within the competency of the court. To inexpert judgment it may seem, without knowledge of such facts and circumstances, that the addition of pipe to an already existing and singly considered pipe-line might well be an extension, even though such pipe-line lies parallel to another and the two constitute a double pipe-line. It is idle to argue that we must accept Consolidated's designation of the construction desired by it at Edgerton as an enlargement, because at the hearing below there was no controversy about

it. The Commission here challenges the designation, and in any event, we are dealing with a question of jurisdiction and it is axiomatic that jurisdiction may not be conferred upon a federal court by consent.

■ Whatever may be the limits placed by the Act upon the authority of the Commission in other respects, it is clear that under § 717c(b) the authority of the Commission, in respect to undue preferences or advantages, is without limitation. It is true that the order of the Commission granting Panhandle a certificate of convenience and necessity for the construction of the "Group B" facilities, includes a determination that such construction and operation will have no adverse effect on existing rates and services. There is no finding, however, that construction and operation of part of such facilities or their construction and operation in any given sequence will not have such adverse effect. Such determination must, it seems, be made by those entrusted with supervision and regulation rather than by courts, and even were we to conclude that the district court has jurisdiction to grant the relief here prayed, there would remain the question whether its exercise would be appropriate. It would impair public confidence in courts, if a decree directing the construction sought at Edgerton could be nullified by a determination of the Commission that undue preference or prejudice would result from such construction, or conversely, confidence in and the efficiency of the Commission would be destroyed if its determination became a nullity by reason of the overriding authority of court decree.

■ The collateral relief prayed by Consolidated is also, in our judgment, beyond the jurisdiction of the court to order without interfering with the regulatory powers of the Commission. If the installation and operation of the facilities at Edgerton Station may result in changes and operation of the Panhandle system both east and west of Edgerton, it must follow that the operation of existing facilities in such manner as is sought may, under certain circumstances, likewise result in changes of service to other customers and bring about undue preference or undue discrimination within the power of the

Commission to control. We are not persuaded that the Commission has no authority to regulate service in view of what was said in the Hope case, supra, 320 U.S. 591, at page 617, 64 S.Ct. 281, 88 L.Ed. 333. The Commission has already prescribed emergency service rules and regulations to bring about undiscriminatory practices and services with respect to deliveries by the very pipe-line here involved in orders which, for the purposes of this case, are accepted as valid. Consolidated argues that the Commission's lack of authority to prescribe reasonable rules and regulations pertaining to service is demonstrated by the refusal of the Congress to pass the so-called Rizley Bill which undertook to add a new subsection to the Natural Gas Act, specifically authorizing the Commission by order to require any natural-gas company to perform its obligations and to install and maintain such service instrumentalities as shall be reasonably necessary for that purpose. What considerations led the Congress to withhold this express authority from the Commission we do not know, and Consolidated argues that it is immaterial. No legislative proceedings are brought to our attention to throw light upon Congressional purpose. We are not required and do not decide that the Commission has power to enforce contractual obligations. We do hold that adequacy and impartiality of service, in the light of existing circumstances, is within Commission control. This must be so if control over rates means anything, since adequate service is a necessary concomitant in the fixing of reasonable rates. If this is so in respect to private utilities it must be even more important in the case of utilities which are affected with a public interest. If the Commission has no authority to order adequate service to customers, in view of all the conditions and circumstances involved, the basic purpose of the Natural Gas Act fails of realization. We can attribute to the Congress no purpose to withhold from the Commission control over services. The power to prevent preferences and discrimination both as between individuals and classes, carried with it by necessary and inescapable implication, authority to regulate service.

Much of the information as to the technical and practical phases of the Panhandle system necessary for the determination of issues here involved, is already in the Commission's possession. The problems to be met call for judgment within its peculiar and expert experience. Consolidated points to the fact that in denying a request of the Michigan Public Service Commission that Panhandle be ordered to curtail deliveries to its interruptible industrial customers so as to insure maximum deliveries to firm customers, the Commission, in effect, conceded its lack of power to grant the request. We take no such view. In its opinion the Commission said it expected Panhandle to curtail gas deliveries to interruptible customers if necessary to do so and to the extent required to operate the Edgerton Station at capacity. It is not an unusual practice either by court or Commission, to grant opportunity in advance of mandate, with the exercise of power reserved for failure to comply. Consolidated has not invoked the authority of the Commission to the full extent of its regulatory powers. Until it has done so there is nothing for a court appropriately to decide. It is not for us to suggest the mechanism of invocation. It will be time enough to appraise the method when, either upon direct appeal under § 19, 15 U.S.C.A. § 717r or in review of an original proceeding, the issues are presented after exhausting administrative remedies.

The decree below is affirmed.