The **CENTRAL WEST UTILITY COMPANY and Missouri Power and Light Company, Petitioners,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent.**

**No. 11729.**

United States Court of Appeals
Third Circuit.

Argued June 5, 1956.

Decided July 25, 1956.

Dick H. Woods, Kansas City, Mo., and Lester G. Seacat, Jefferson City, Mo., Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., of counsel, for petitioners, Central West Utility Co. and Missouri Power & Light Co.

Harry S. Littman, Washington, D. C., Steptoe & Johnson, Washington, D. C., of counsel (William E. Miller, Washington, D. C., on the brief), for Panhandle Eastern Pipe Line Co., intervenor.

Louis Flax, Washington, D. C. (Willard W. Gatchell, Gen. Counsel, Mary B. Flax, Washington, D. C., on the brief), for respondent, Federal Power Commission.

Before MARIS, KALODNER and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

The Central West Utility Company and Missouri Power and Light Company seek review of that part of an order of the Federal Power Commission issued on June 7, 1955 [1] which involves the maximum peak day natural gas deliveries to be made to them from the lateral pipeline [2] owned and operated by Panhandle Eastern Pipe Line Company, a natural gas company, extending from the connection with its main pipeline at Louisburg, Kansas, to Liberty, Missouri. This issue was previously before this court on a petition filed by Panhandle in which it sought review of the orders of the Commission accompanying Opinion No. 218 insofar as the Commission directed Panhandle to eliminate discrimination in service between the customers on its Liberty Lateral and those on its other laterals. Panhandle contended that in effect it was directed to enlarge these facilities. This court set aside parts of these orders on the ground that it was beyond the power of the Commission to order Panhandle to enlarge the facilities of the Liberty Lateral and to direct Panhandle to deliver gas in excess of the designed or existing capacity of that lateral. Panhandle Eastern Pipe Line Co. v. Federal Power Comm., 3 Cir., 1953, 204 F.2d 675, rehearing denied 204 F.2d 682.

Pursuant to the mandate of this court, the Commission conducted further proceedings in respect to these and related issues. It found that the maximum peak day deliveries on the Liberty Lateral during the 1953–54 heating season were 5,540 Mcf to Central West and 2,909 Mcf to Missouri Power and that the public interest required that future maximum deliveries to each of them be fixed at these peak volume deliveries, respectively. The order here under review accordingly so provided.

The order must in this regard be affirmed. Under the mandate of this court it was the duty of the Commission to determine the present capacity of the Liberty Lateral or its original designed or actual capacity, whichever was greater, and allocate the gas to be delivered from the lateral within the maximum capacity thus ascertained. We are satisfied that the Commission did not err in the performance of this task. It found that the amounts of gas delivered by Panhandle from the lateral on the peak day of the 1953–54 heating season represented the maximum historical capacity of the lateral.

In the initial decision of the examiner, issued April 19, 1955, which the Commission in this regard approved and adopted as the decision of the Commission by the order here under review, it is said that

"* * * there was no showing that the Liberty Lateral ever had the capacity to deliver larger volumes of gas than those delivered by it in the 1953–54 heating season. Attempts

---

1. Another part of this order is under attack by Panhandle Eastern Pipe Line Company at our docket No. 11,734, 3 Cir., 236 F.2d 289.

2. This pipeline and its accompanying facilities are interchangeably called the Louisburg Lateral or the Liberty Lateral.

to tie together the original maximum capacity of the pipe and the capacity of valves installed several years after the line was placed in operation failed because portions of the pipe installed in the line were not standard pipe and it is now impossible to determine what volumes might have been transported through such sections if the present valves had been installed when the line was constructed. In the absence of evidence that the capacity of the lateral was ever greater than at present, it is impossible to make the necessary finding that a former greater capacity can be restored by reconstruction or rehabilitation. The one thorough test shown to have been made was subsequent to installation of the new valves and resulted in a pipe rupture at 327 pounds pressure. This rupture was not shown to have been related in any way to corrosion or other deterioration of the pipe and occurred sufficiently close to the 325 pound pressure maximum claimed by Panhandle to give support to this claim."

The evidence fully supports these findings and conclusions.

■ As we pointed out when this matter was here before,[3] Panhandle cannot be compelled against its will to increase its facilities so as to deliver to its customers on the Liberty Lateral a volume of gas in excess of the capacity of the lateral. The sole obligation which the Commission may exact of Panhandle is to maintain the existing facilities of the lateral by their restoration, if they have been permitted to deteriorate, to their original designed or actual capacity. Here the record fully supports the conclusion of the Commission that there was no adequate showing that the Liberty Lateral had ever had a designed or actual capacity greater than its present capacity. The assertion by Central West and Missouri Power that the lateral could

maintain a pressure of 450 p. s. i. and deliver consequently larger volumes of gas if it were constructed of standard new pipe may be true but is quite immaterial.

The order of the Federal Power Commission will be affirmed.

---

3. Panhandle Eastern Pipe Line Co. v. Federal Power Comm., 3 Cir., 1953, 204 F. 2d 675, 679–680, rehearing denied 204 F. 2d 682, 683.