ANDERSON-PRICHARD OIL CORP. v. CORPORATION COMMISSION et al.

No. 35089.   Jan. 10, 1953.

*252 P. 2d 450.*

W. H. Brown, Paul G. Darrough, Virgil R. Ball, and Solus S. Brooks, Oklahoma City, for plaintiff in error.

Floyd Green, Conservation Attorney, for the Corporation Commission.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for Eason Oil Company and Midland Co-Operative Wholesale.

O'NEAL, J. Anderson-Prichard Oil Corporation, hereinafter called "applicant," or in the alternative, "Anderson-Prichard," appeals from an order of the Corporation Commission of the State of Oklahoma, hereinafter referred to as the "Commission" entered on February 14, 1950, in cause CD No. 2255, being its order No. 24438, entitled:

"In Re: Application of Anderson-Prichard Oil Corporation, a corporation, for an order determining that the full production of natural gas wells drilled into and producing from the ·Bartlesville sand common source of supply in the Fourdee Field in Noble County, Oklahoma, is in excess of the market demand and requiring purchasers of gas produced from said common source of supply to take ratably from all wells producing therefrom in the manner required by law."

From the order entered, Anderson-Prichard appeals, and for ground of reversal asserts that the order establishing the correlative rights in gas produced in the Fourdee Pool in Noble county, Oklahoma, is not in conformity with the applicable statutes, or the permissible rules or regulations of the Commission.

The application of Anderson-Prichard discloses that it is the owner and operator of six gas wells capable of producing gas from the Bartlesville sand common source of supply in the Fourdee Field in Noble county, Oklahoma; that the production of gas from the field is far in excess of the market demand therefor; that the Eason Oil Company and the Midland Co-Operative Wholesale, a corporation, hereinafter referred to as "Eason" and "Midland," are the owners and operators of three producing gas wells in the Fourdee Pool, and that the latter named producers refuse to share their market with the applicant; and that the Sinclair Prairie Oil & Gas Company, the purchaser of Eason's and Midland's gas, refuses to take any gas from wells owned and operated by applicant, resulting in applicant's wells being shut in and in the destruction of its correlative rights in the gas in and under the pool to applicant's damages. Applicant prays for an order for ratable taking of gas from the common source of supply, and requiring the purchaser of gas to take ratably from all wells in the Fourdee

Pool as required by the statutes, rules or regulations of the Commission.

The Commission afforded applicant and respondents, Eason and Midland, an ample opportunity to produce evidence before its trial examiner and the Commission in support of their respective claims. The record is very voluminous, consisting, in the main, of evidence of geologists, mining petroleum engineers, and other expert witnesses. After the trial examiner filed his original report, Eason and Midland filed their objection to its adoption. The Commission ordered the cause back to the trial examiner for further testimony and findings of fact. The trial examiner thereafter filed a second report to which applicant filed objections. The Commission again referred the matter to its trial examiner for additional evidence and findings. Thereafter the third and final report was filed by the examiner, which was approved by the Commission, and from the order entered, Anderson-Prichard perfected the appeal.

Applicant's contention that the law of capture, except as modified by laws adopted in the exercise of the police power, is still the law governing the production of gas in the state of Oklahoma, is not seriously challenged, and is sustained by our decisions. The principle is likewise announced by the Supreme Court of the United States, in Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 52 S.Ct. 559, and West v. Kansas Natural Gas Co., 221 U.S. 229, 31 S. Ct. 564.

Applicant, while conceding that the Commission under applicable statutes clearly had authority to exercise jurisdiction to apportion or allocate the gas and requires ratable taking, contends that the Commission failed and neglected to follow the plain mandate of the statutes. Specifically, its claim is that the Commission adopted and applied a formula not authorized by statutes, and that the application of its formula unjustly discriminates against applicant and deprives it of its property rights in violation of and contrary to art. 2, §7, of the Constitution of Okla-homa, and the Fourteenth Amendment of the Constitution of the United States, and deprives it of the equal protection of the laws guaranteed by said amendment.

Applicant refers to §§2 and 3 of c. 198 of the Session Laws of 1913 (now Title 52 O.S. 1951 §§232 and 233). Also, they refer us to §4 of c. 197 of the Session Laws of 1915 (now Title 52 O.S. 1951 §239) as the controlling statutes applicable for a proper solution of the questions here presented.

Applicant makes no contention that the finding of the Commission is not supported by substantial evidence, but bases the appeal upon the sole ground that the Commission acted in excess of the statutory authority authorized under the quoted statutes. The jurisdictional facts pleaded and established disclose that the gas production in the Fourdee Pool was in excess of the market demand and that Eason and Midland had a market demand for their gas and that applicant had no market demand for its production. It was further established that applicant had six wells capable of producing gas in substantial quantities and that Eason and Midland had three wells producing gas in substantial quantities; that all wells were bottomed in the same horizon, and were or would produce from a common source of supply. One other fact established was that Sinclair Prairie Oil & Gas Company had connected its gas line with the Eason and Midland wells and were purchasing their gas, but declined to make connections with applicant's wells on the ground that its pipeline facilities would not carry an additional volume of gas.

The order of the Commission is chiefly challenged upon the asserted ground that the Commission entirely overlooked and failed to take into consideration the natural flow of all the wells within the common source of supply, and further failed to take into consideration the natural flow of its wells as they bear to the natural flow of all wells producing from the common source of supply. They claim that this

is the sole yardstick for the determination of correlative rights in the gas to be produced under the cited statutes.

The earliest Gas Conservation Act (1913) 52 O.S. 1951 §§232 and 233, supra, permitted an owner to take all gas under his land or lease until it was exhausted. If two or more owners of gas wells were producing gas from a common reservoir, each owner was limited in his take to the proportion of the natural flow of his wells to the natural flow of each other gas producer. The natural flow was to be determined by any standard measurement monthly, but no more than 25% of the natural flow of gas could be produced without the consent and approval of the Commission. The purchaser of the gas was required to take the gas so produced ratably from the owner or as might be fixed by the Commission.

In 1915, an additional Gas Conservation Act was enacted which includes sec. 239, supra, and under the Act, when the full production of gas from a common source of supply is in excess of the market demand, a producer may only take such proportion of gas as the natural flow of his wells bears to the natural flow of all wells from the common source of supply. To ascertain these allowables the Act provides that consideration must also be given to the acreage drained by each well. Under sec. 239, supra, the Commission is authorized to establish rules and regulations for determining the natural flow of the wells and regulate the taking of gas from a common source of supply so as to prevent waste, protect the rights of individual owners and prevent unreasonable discrimination.

Applicant contends that if the Commission had enforced the mandate of section 239, supra, the Commission would have employed the following formula:

$$\frac{P \ (\text{Potential-natural flow})}{TP \ (\text{Total Potential-natural flow})} \times \frac{A \ (\text{Acreage drained})}{AU \ (\text{Acreage unit-160})} = \begin{array}{l}\text{Allowable for each well,}\\ \text{or the well's share in}\\ \text{the market for the pro-}\\ \text{duction if full produc-}\\ \text{tion cannot be market-}\\ \text{ed.}\end{array}$$

and, therefore, would have found applicant entitled to 75% of the gas in the pool and Eason and Midland 25% of the gas in the pool. Whereas, under the formula it did employ, it allocated to applicant 65% as applied to its six wells, and to Eason and Midland 35% of the gas in the pool applicable to their three wells.

It will thus be seen that applicant's contention is that when the Commission found the wells' potential, which they say is the natural flow, and found factors determining the acreage drained, it could go no further and take into consideration such factors as the porosity percentage underlying each lease, times the average thickness of the producing formation underlying each lease, times the absolute open flow raised to the 0.1 power, as is authorized by the Commission's order. It is then argued that the Commission, instead of taking the natural flow of a well, and after giving consideration to the acreage as commanded by the quoted statute (§239), emasculated the statutes by giving consideration to factors not enumerated therein and by multiplying said factors by the absolute open flow raised to the 0.1 power, the Commission substituted for the natural flow referred to in the statute, a figure which, if multiplied by itself ten times, would equal the open flow.

As we construe the Act it is not subject to the contentions made by applicant. It will be observed that applicant's formula is based upon certain "potentials" of its wells, which means no more than "the daily rate of flow." The statute does not base allowables upon potentials, but bases them upon the natural flow of the wells. Natural flow, as that term is employed in the Act, means the total volume of gas

which a given well will produce. Moreover, the statute does not delineate the course the Commission must take to determine the natural flow of a gas well, or wells, as they bear to the total natural flow of the common source of supply. As we have seen, the statute authorizes and directs the Commission to prescribe rules and regulations for the determination of the natural flow of wells producing from a common source of supply to the end that the rights of all producers be protected. As we have heretofore indicated, applicant's position is untenable in that it bases its asserted rights upon the "potentials" of its wells, which means no more than "the daily rate of flow", and, as we have seen, the statute does not limit the take of gas to the "natural flow of the well per day," but is based upon its "natural flow." To determine this volume of gas the Commission may properly consider the ascertained area of the reservoir, based upon productive acres underlying each lease, the thickness of the producing formation, and the percentage of effective porosity and its permeability.

There is sufficient evidence in the record to the effect that it is impossible to determine reserves in place based upon potentials. As an illustration, one well might have an open flow of one million cubic feet of gas per day with a porosity of 16%; the other well with an open flow of 100 million cubic feet per day but rather than have one hundred times as much gas in place would only have the ratio of 25% to 16%, or approximately one-half again as much gas in place. That a well may have a low potential but a large volume of gas in place is found in many producing gas fields. Such a well would ultimately drain the entire tract over a long term of years, but under its low potential it would take longer to drain than it would to drain the tract of the other adjoining wells.

The state under its police power has invested the Corporation Commission with general power and authority to prevent the waste of gas, and protect the rights of owners producing gas from a common reservoir to the end that no owner will suffer an unreasonable discrimination. To that end, under express legislative authority, the Commission is authorized to make rules in aid of the duty imposed upon it.

We do not treat the rules of the Commission as talismanic or magical formulas, but as rational instruments for doing justice between owners having correlative rights in the recovery of a natural resource from a common pool.

The record discloses that the Commission has given careful consideration to the expert opinions of physicists, geologists and petroleum engineers, and the opinion of layman based upon their empirical experience. We therefore conclude that their determination of the controversy has been properly resolved.

The Commission order reduced applicant's ratable allowable 9% of the amount contended for.

We must indulge the presumption as commanded by the Constitution, art. 9, §20, that the order is reasonable until the contrary is made to appear. The order does not impinge upon asserted rights under the State or Federal Constitutions. The order of the Commission is affirmed.

ARNOLD, C.J., HALLEY, V.C.J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.